BAUMGARTE ET, PLAINTIFFS-APPELLANTS, *v.* BOARD OF REVIEW, BUREAU OF UNEMPLOYMENT COMPENSATION ET, DEFENDANTS-APPELLEES.

Common Pleas Court, Allen County.

No. 46882. Decided November 30, 1961.

*Mr. Albert Negin* and *Mr. Goldberg* of *Messrs. Goldberg, Previant & Cooper.*
*Mr. Thomas B. Walker*, assistant attorney general.

DAVISON, J. This case is before the Common Pleas Court on appeal from the Board of Review, Bureau of Unemployment Compensation, which board, in its decision, denied compensation to the appellants. The appellants are employees of the

Fruehauf Trailer Company, of Delphos, Ohio. The bureau's referee in his opinion, found, under Section 4141.29 (D) (1) (a), Revised Code, that the appellants were laid off at the Delphos plant due to a labor dispute, other than a lockout, at the factory, establishment, or other premises at which they were employed, namely a labor dispute at the Avon Lake Plant of the Fruehauf Trailer Company.

The contention of the appellants is that the layoff was due to a shortage of steel at the Delphos plant which was occasioned by the general steel strike of 1959; and further, that even if the steel shortage should be found not to be the cause of the layoff, then any labor dispute at the Avon Lake Plant of the Fruehauf Trailer Company was not at the "factory, establishment or other premises" at which they were employed.

According to Section 4141.28, Revised Code, the appeal in the Common Pleas Court shall be heard upon the record certified to the court by the board of review. The court has carefully read and considered the record in this case as certified to it by the board of review. The uncontradicted testimony in the record is that eight or nine of the men laid off were "laid off on account of steel." Some of the layoff slips said "shortage of steel" and the others said "reduction in force." None of the men laid off were notified that they were being laid off because of a labor dispute at the Avon Lake Plant (see record, pages 16, 30 and 31). The record is replete with testimony that the layoff was due to shortage of steel and that except for a lack of steel, the men laid off could have and would have worked on other trailer units in the Delphos plant (record, pages 10, 19, 25, 29, 30 and 33). It would seem that the referee has completely ignored this testimony and has proceeded to a determination of the case solely upon the issue of whether or not a labor dispute existed on the establishment of the employer. The finding of the referee and the decision of the board of review are against the manifest weight of the evidence insofar as they ignore the evidence as to the effect of the steel shortage at the Delphos plant upon the employment situation there.

Assuming, however, that the case is to be determined, as the referee chose to do, by resolving the issue as to whether the layoffs were due to a labor dispute "at the factory, estab-

lishment or other premises'' at which the appellants were employed, it is the conclusion of this court, from a review of the entire record, that the finding of the referee in this matter is also against the manifest weight of the evidence.

To begin with, the so-called ''reefer'' line was a new line which had been in operation about three months and in which operation about 20% of the capacity of the Delphos Plant was involved, and as to which various employees, some thirty or forty in number, were employed at one time or another as the so-called ''reefers'' (refrigerator trailers) were trucked in from the Avon Lake Plant to be worked on. The uncontradicted evidence is that the men who worked on the ''reefer'' line did not work on that line exclusively but worked on other jobs in the plant from time to time; and, although the referee makes a finding that ''work on the reefers was about 25% of the Delphos plant but occupied the men on the reefer line 100% of their work time until the shells ceased to be delivered,'' nowhere in the record is there any testimony that any man worked 100% of his time on the ''reefer'' line. On page 24 of the record the question is asked by the referee of the witness Kemper, ''Did they work 100% of their time on the reefers?'' That question is not answered. A Mr. D'Ambrosio, who apparently was appearing for the appellants at the hearing before the referee, stated at this point that Mr. Place did not work on the reefer line himself although he is one of the appellants in this case. Mr. Place thereafter (record, page 25) explains that the men had seniority in the Delphos plant and the youngest men were to go first on layoff regardless of where they worked in the plant, and that as far as he was concerned, he would have held his job if he had had steel to work on government orders. Nowhere in the record does anyone testify that anyone worked 100% on the ''reefer line.''

The referee cites in support of his decision in this case the cases of *McGee* v. *Timken Roller Bearing Company* (161 N. E. [2d], 905), and *Adamski* v. *Bureau of Unemployment Compensation*, 108 Ohio App., 198, 9 Ohio Opinions (2d), 220 (161 N. E. [2d], 907). The court has examined these authorities and finds that the instant case is clearly distinguishable from them on the facts. In the *Adamski case*, the Champion Spark Plug

Company plant at Toledo depended upon the production of insulators at the Hamtramck, Michigan plant for over two-thirds of the insulators used in the Toledo plant in the production of spark plugs. The only product made at the Toledo plant was spark plugs. The strike at the Hamtramck plant which cut off the supply of insulators to the Toledo plant compelled a complete rescheduling of spark plug production at the Toledo plant and as the men were laid off, they were notified that they were being laid off because of a strike at the Hamtramck plant. The Hamtramck plant was 60 miles away from the Toledo plant. By a 2 to 1 decision the Court of Appeals held that the stoppage of work at Toledo was due to a labor dispute on the establishment of the Champion Spark Plug Company, namely the Hamtramck plant, and laid down the rule of "geographic proximity" and "functional integrality" in defining and determining the meaning of the word "establishment" as used in the statute. In the *Adamski case* the court held that the layoff in the Toledo plant was due to a labor dispute in the "establishment" of the employer, namely the Hamtramck plant 60 miles away. The decision in that case was clearly justified because of the fact that the Toledo plant depended for all but a small percentage of its insulators upon the production of the Hamtramck plant, and the two plants were so integrated and functioned together as a unit to the extent that a work stoppage in one would necessarily curtail employment in the other and that the fact that they were separated geographically by 60 miles did not prevent the two plants from being considered as one "establishment" as that term is used in the statute.

In the instant case the two plants are some three times farther apart than they were in the *Adamski case*; only 20% of the production of the Delphos plant could possibly be affected in any way by a stoppage of work at the Avon Lake plant, and the Delphos plant had many other lines of production within which to absorb and utilize the labor of its employees besides the so-called "reefer" line. Clearly the instant case is distinguishable on the facts from the *Adamski case*. A comparison of the facts in the case of *McGee* v. *Timken Roller Bearing Company, supra*, with the facts in the instant case show that the instant case is also clearly distinguishable on the facts from the *McGee case*.

It is the considered opinion of this court, therefore, that the finding that the labor dispute at the Avon Lake Plant of the Fruehauf Trailer Company was upon the same "establishment" at which any of the appellants in this case was employed is manifestly against the weight of the evidence, as the same appears in the record of this case.

It is the finding of this court, therefore, that the decision of the Board of Review of the Bureau of Unemployment Compensation is unlawful, unreasonable, and manifestly against the weight of the evidence as to all the appellants in this case except William Place, and except as to William Place, the said decision of the board of review is hereby reversed. The decision of the board of review as to William Place, based on his failure to comply with the reasonable rules and regulations of the Bureau of Unemployment Compensation, is hereby found not to be unlawful, unreasonable, and manifestly against the weight of the evidence, and is hereby affirmed.

Journal entry embodying the finding of the court may be prepared by counsel and submitted for approval.